UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-20996-CIV-KING/BANDSTRA

DURANE JOHNSON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**FINAL ORDER OF DISMISSAL**

**THIS CAUSE** comes before the Court upon the September 23, 2010, Report and Recommendation ("R&R" or D.E. #47) of Magistrate Judge Ted E. Bandstra recommending denial of Petitioner's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. Petitioner filed objections (D.E. #48) to the R&R on October 4, 2010, and Respondent filed objections (D.E. #49) on October 7, 2010. Upon consideration of the R&R and the parties' objections, the Court concludes that the R&R contains well-reasoned recommendations and the R&R is affirmed and adopted.

**I. Background**

This Petition centers on the meaning of the term "crime of violence" as used in the career offender provisions of the United States Sentencing Guidelines. Petitioner Johnson challenges the sentence imposed after he pled guilty to knowingly and intentionally importing 500 grams or more of cocaine into the United States in violation of 21 U.S.C. § 952(a). (D.E.

#47 at 1–2). At sentencing, Petitioner was classified as a career offender. *Id.* at 2. Under the Guidelines,

> a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a).

Section 4B1.2 of the Guidelines defines the term "crime of violence" as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The sentencing court sentenced Petitioner as a career offender upon a finding that the instant offense of conviction was a felony controlled substance offense, and Petitioner had one prior conviction for criminal solicitation of drugs, and two prior convictions for "crimes of violence." (DE #47 at 2). The "crime of violence" convictions were for carrying a concealed weapon and manslaughter. *Id.* Because neither of those crimes include "as an element the use, attempted use, or threatened use of physical force against another person," and neither is "burglary of a dwelling, arson, or extortion, [or] involves the use of

explosives," they are only "crimes of violence" under § 4B1.2 if they "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." All three prior convictions qualified as predicate offenses under Eleventh Circuit law interpreting the language of § 4B1.1(a)(2) at the time of sentencing. *Id.* As a result, Petitioner's offense level was enhanced by eight levels and the length of the sentences within Petitioner's advisory Guideline range more than doubled.[1] *Id.* On February 2, 2002, Petitioner was sentenced to 188 months' imprisonment followed by a four-year term of supervised release. *Id.*

On April 16, 2009, Petitioner filed the instant § 2255 motion, claiming he was wrongfully sentenced as a career offender because his prior convictions for manslaughter and carrying a concealed firearm no longer qualify as "crimes of violence." *Id.* Thus, according to Petitioner, he has only one qualifying predicate offense for career offender status (criminal solicitation of drugs), and is therefore ineligible for that designation. *Id.* In support of his arguments, Petitioner cites *Begay v. United States*, 128 S. Ct. 1581 (2008),[2] and *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

---

[1] Petitioner was assigned a Criminal History Category IV and a base offense level of 26, which was enhanced to 34 as a result of the career offender finding. (DE #47 at 2). Three levels were then deducted for acceptance of responsibility, resulting in a total offense level of 31 and a sentencing range of 188–235 months. *Id.* Had Defendant not been classified a career offender, his total offense level would have been 23 (the base level of 26 with a three-level deduction for acceptance of responsibility), and his sentencing range would have been 70–87 months.

[2] The Parties agree that the ruling in *Begay* is a substantive sentencing rule that is retroactively applicable on collateral review to the instant case. (DE #47 at 3). *See Ross v. United States*, 288 F.3d 677, 681 (11th Cir. 2002 (holding that a new constitutional rule applies retroactively in a collateral proceeding where the rule is substantive).

In *Begay*, the United States Supreme Court decided which types of prior felony convictions permit sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See Begay,* 128 S. Ct. at 1583. The ACCA requires enhancement of the underlying sentence where the defendant has prior convictions for a "violent felony." 18 U.S.C. § 924(e). The definition of a "crime of violence" under the Guidelines and a "violent felony" under the ACCA are "virtually identical,"[3] and courts analyze both under the same framework. *United States v. Archer*, 531 F.3d 1347, 1352, n.1 (11th Cir. 2008) (internal citations omitted); *see also United States v. Harris*, 586 F.3d 1283, 1285 (11th Cir. 2009) ("We have utilized the Supreme Court's framework outlined in *Begay* to assess crimes of violence under the Sentencing Guidelines."). The *Begay* Court considered whether driving under the influence of alcohol is a "violent felony" under the ACCA. 128 S.Ct. at 1583. The Court held that the term "violent felony" encompasses only crimes that are "roughly similar, in kind as well as in degree of risk posed, to the example crimes [in the ACCA] themselves": burglary, arson, extortion and crimes involving

---

[3]The ACCA defines "violent felony" as follows:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2).

explosives." *Id.* at 1584–5. The Court then explained that the listed crimes "all typically involve purposeful, violent, and aggressive conduct." *Id.* at 1587 (internal quotations and citations omitted). The Court ultimately held that because driving under the influence did not share those characteristics, it fell outside the scope of the "violent felony" definition. *Id.* at 1484. In response to the decision in *Begay*, Petitioner contends that manslaughter no longer qualifies as a predicate offense for career offender status because it cannot satisfy *Begay*'s requirement of "purposeful, violent, and aggressive conduct." (DE #47 at 2).

In *United States v. Archer*, the Eleventh Circuit held that "in light of the Supreme Court's decision in *Begay*, the crime of carrying a concealed firearm may no longer be considered a crime of violence under the Sentencing Guidelines." 531 F.3d 1347, 1352 (11th Cir. 2008). Respondent concedes that Petitioner's prior conviction for carrying a concealed firearm no longer qualifies as a "crime of violence" after *Archer*, but argues that Petitioner is still not entitled to relief because his manslaughter conviction is a "crime of violence" even in light of *Begay*. (D.E. #47 at 4). Magistrate Judge Bandstra agreed with Respondent and recommends in the R&R that Petitioner's Motion be denied.

Petitioner timely objected to the R&R, arguing that the recommendations were based on improper evidence and erroneous interpretations of law. (DE #47). Petitioner further argues that the interests of justice warrant re-sentencing or review of Petitioner's prior drug offense since at least one of his convictions no longer qualifies as a crime of violence. *Id.* at 9. Respondent also timely filed objections, arguing that Petitioner's claims are not

cognizable and that they are procedurally barred. (DE #49, 50). Respondent's objections reflect the same arguments already considered in the R&R, and for the reasons stated in the R&R, those objections are overruled. *See* DE #47.

## II. Discussion

The Court agrees with the R&R that Petitioner's manslaughter conviction remains a predicate offense for career offender status under the Guidelines after *Begay*. Petitioner objects to this finding, first arguing that the R&R improperly relied on the state court's finding in its Order of Sentence in Petitioner's manslaughter case that "the crime was committed in an aggressive or violent manner." (DE #48 at 2).

As argued by Petitioner and explained in the R&R, *Begay* requires courts to use a "categorical approach" when determining whether a crime is a "crime of violence." 553 U.S. 137, 141 (2008). Under the categorical approach, courts "consider the offense generically, [and] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* Accordingly, the R&R looked to the relevant Florida statute, which defines manslaughter as "the killing of a human being by the act, procurement, or culpable negligence of another without justification in cases in which such killing shall not be excusable homicide or murder." Fla. Stat. §782.07(1). The R&R states that under this definition, manslaughter may or may not qualify as a "crime of violence," depending on whether a defendant is convicted under the "culpable negligence" prong or the "act or procurement" prong. (DE #47 at 15). In this case, the

Magistrate Judge found that "there is no evidence detailing under which prong of the manslaughter statute petitioner was convicted." *Id.* The R&R instead cites the state court's Order of Sentence, which stated the crime was "committed in an aggressive or violent manner." *Id.*

Petitioner objects, relying on *Shepard v. United States*, 544 U.S. 13 (2005). In *Shepard*, the Supreme Court set out what a court may consider to determine exactly what a plea of guilty necessarily admitted. *Id.* A court "is limited to the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26 (holding that a court may not look to police reports to determine whether a plea necessarily admitted the elements of "generic burglary"). A finding of fact in a state court's Order of Sentence is a "comparable judicial record" and is an appropriate consideration in the career offender determination. The Order of Sentence is a "conclusive record[] made or used in adjudicating guilt," and does not raise the same concerns as "documents submitted to lower courts even prior to charges," like the police reports in *Shepard*. *See* 544 U.S. at 21. The context of the state court's "aggressive or violent manner" finding, whether or not Petitioner should have been sentenced as an adult, is irrelevant.

Furthermore, even if the R&R's reliance on the Order of Sentence were erroneous, manslaughter as defined by Fla. Stat. §782.07(1) still qualifies as a predicate offense for career offender status because it is a "crime of violence" regardless of which prong of the

statute applies.

The Florida Supreme Court has defined "culpable negligence" for purposes of the manslaughter statute as:

> reckless disregard of human life, or of the safety of persons exposed to [the] dangerous effects [of the defendant's conduct], or there is that entire want of care which would raise the presumption of a Conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

*McCreary v. State*, 371 So. 2d 1024, 1026 (1979). *See also,* 16 Fla. Jur. 2d *Criminal Law* § 456 (2010) (same); *Cubelo v. State*, 41 So. 2d 253 (Fla. 3d DCA 2010) ("Culpable negligence is consciously doing an act . . . that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury.")

This requirement of "wantonness or recklessness" that is practically intentional meets *Begay*'s requirement that a predicate offense be "roughly similar, in kind as well as in degree of risk posed, to the examples" listed in the Guidelines. *Begay*, 553 U.S. at 143. The Eleventh Circuit Court of Appeals held in *United States v. Harris* that willfully fleeing police either at high speed or with "a wanton disregard for the safety of persons or property" is purposeful, violent and aggressive as required by *Begay*. 586 F.3d 1283, 1288–9 (11th Cir. 2009) ("Fleeing at high speed or with wanton disregard for safety amounts to holding a finger on the trigger of a deadly weapon, without care for whom the bullet may strike."). Manslaughter committed with a *mens rea* of culpable negligence under Florida law involves

the same "wanton disregard" and is, by definition, similarly purposeful, violent and aggressive.

Petitioner further objects to the R&R's finding that manslaughter is a "crime of violence" on the ground that, under Florida law, manslaughter by act does not require the intent to kill. (DE #48 at 5) (citing *Florida v. Montgomery*, 39 So. 2d 252 (Fla. 2010)). However, as Petitioner correctly points out, the Eleventh Circuit has explicitly rejected the argument that the "purposeful, violent and aggressive" standard requires a specific intent to harm. *United States v. Alexander*, 609 F.3d 1250, 1258 (11th Cir. 2010) (explaining that "a purposeful act demonstrating a callousness and indifference to the lives of others . . . would be similar in kind to the enumerated offenses.").

Additionally, Petitioner argues that the commentary to the Guidelines is not relevant to the "crime of violence" inquiry. (DE #48 at 6). The R&R notes that "the commentary to the Sentencing Guidelines specifies that 'crimes of violence' include manslaughter." (DE #47 at 16). Petitioner objects to the R&R's finding that this inclusion is "clearly a persuasive relevant factor" because the commentary was written before *Begay* and its progeny were decided. (DE #48 at 6; DE #47 at 16). However, the current version of the Guidelines, promulgated in 2009—a year after *Begay* was decided—contains the same version of the commentary. U.S. SENTENCING GUIDELINES MANUAL § 4B1.2, cmt. (2009).

Finally, the Court agrees with the R&R that Petitioner's prior conviction for criminal solicitation of drugs should not be revisited, as Petitioner initially conceded that this offense

qualifies as a controlled substance offense under the Guidelines under current law. (DE #47 at 13, n.6).

After a thorough review of the record, the Court concludes that the R&R contains well-reasoned recommendations. Accordingly, the Court being otherwise fully advised, it is **ORDERED, ADJUDGED and DECREED** as follows:

1. Magistrate Judge Ted E. Bandstra's September 23, 2010 Report and Recommendation **(DE #47)** be, and the same is, hereby **AFFIRMED and ADOPTED**.

2. Petitioner's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 **(DE #1)** be, and the same is, hereby **DENIED.**

3. The Clerk is hereby ordered to **CLOSE** this case.

4. All pending motions are **DENIED as moot.**

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 19th day of November, 2010.

_____
JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:

**United States Magistrate Judge Ted. E Bandstra**

*Counsel for Petitioner*

**Vincent Peter Farina**
Federal Public Defender's Office
150 W Flagler Street
Miami, FL 33130-1556
305-530-7000X141
Fax: 536-4559
Email: vincent_farina@fd.org

**Tracy Dreispul**
Federal Public Defender's Office
150 W Flagler Street
Miami, FL 33130-1556
Email: Tracy_Dreispul@fd.org

*Counsel for Respondent*

**Noticing 2255 US Attorney**
Email: usafls-2255@usdoj.gov

**Benjamin Greenberg**
United States Attorney's Office
99 NE 4 Street
7th Floor
Miami, FL 33132
305-961-9029
Fax: 305-536-7213
Email: benjamin.greenberg@usdoj.gov

**Marcus A. Christian**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9401
Fax: 530-7976
Email: marcus.a.christian@usdoj.gov